LAWRENCE A. REISTER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Reister v. Commissioner
Docket No. 26643-88
United States Tax Court
T.C. Memo 1995-305; 1995 Tax Ct. Memo LEXIS 303; 70 T.C.M. (CCH) 31; July 12, 1995, Filed *303 Decision will be entered under Rule 155. For petitioner: Lois C. Blaesing and Chauncey W. Tuttle, Jr.
For respondent: Mary P. Hamilton, Paul Colleran, and William T. Hayes. DAWSON, WOLFE
DAWSON; WOLFE
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to Special Trial Judge Norman H. Wolfe pursuant to the provisions of section 7443A(b)(4) and Rules 180, 181, and 183. [1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE WOLFE, Special Trial Judge: This case is part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion *304 996 F.2d 1216 (6th Cir. 1993). The facts of the underlying transaction in this case are substantially identical to those in the Provizer case. Through a second tier partnership, Efron Investors (EI), petitioner invested in the Clearwater Group limited partnership (Clearwater), the same partnership considered in the Provizer case. Pursuant to petitioner's request at trial, this Court took judicial notice of our opinion in the Provizer case. In a notice of deficiency, respondent determined deficiencies in petitioner's 1981 and 1982 Federal income taxes in the amounts of $ 11,863 and $ 2,575, respectively, and an addition to tax for 1981 under section 6659 for valuation overstatement in the amount of $ 3,559. In addition to the above deficiencies and addition to tax, respondent asserted, in an amended answer, additions to tax for 1981 in the amount of $ 558 under section 6653(a)(1) for negligence and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on $ 11,157. [2] In addition, respondent asserted in the amended answer that interest on deficiencies for 1981 accruing after December 31, 1984, would be calculated at 120 *305 percent of the statutory rate under section 6621(c). [3]
In her opening brief, respondent asserted a deficiency in petitioner's 1981 Federal income tax in the amount of $ 11,157 and additions to tax for that year in the amount of $ 2,893 under section 6659 for valuation overstatement, in the amount of $ 558 under section 6653(a)(1) for negligence, and *306 under section 6653(a)(2) in an amount equal to 50 percent of the interest due on $ 11,157. The addition to tax under section 6659 in the amount of $ 2,893 was calculated based upon an underpayment of tax in the amount of $ 9,644 allegedly attributable to a valuation overstatement. We consider the deficiency and additions to tax for 1981 reduced to correspond to the amounts in dispute as set forth in respondent's opening brief. The only issues remaining for our decision in this case relate to the year 1981. We are not required to decide any issues with respect to petitioner's 1982 Federal income tax. The deficiency for 1982 resulted from respondent's examination with respect to the 1982 partnership returns of Hampton Investors, Ltd., and Efron Investors II (Efron II) in the respective amounts of $ 391 and $ 10,248. On February 21, 1992, the parties filed a Stipulation of Settlement of Tax Shelter Adjustments with respect to petitioner's investment in Hampton Investors, Ltd. The stipulation provided that petitioner is allowed to deduct $ 293 of the amount disallowed by respondent with respect to Hampton Investors, Ltd., that petitioner concedes the remaining amount disallowed of $ *307 98, and that, as a result of the stipulation, all issues related to the "Harris-Winters tax shelter" are resolved. With respect to petitioner's investment in Efron II, petitioner claimed an operating loss in the amount of $ 16,264 on his 1982 Federal income tax return. In the notice of deficiency, respondent disallowed $ 10,248 of petitioner's claimed loss in Efron II. During 1982, Efron II invested in Dickinson Recycling Associates, a partnership that is subject to the provisions of sections 6221 through 6231 (the TEFRA provisions) enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, sec. 402(a), 96 Stat. 648. The TEFRA provisions apply generally to partnerships [4] for all taxable years beginning after September 3, 1982. Sparks v. Commissioner, 87 T.C. 1279, 1284 (1986). Under the TEFRA provisions, the tax treatment of partnership items is decided at the partnership level in a unified partnership proceeding rather than separate proceedings for each partner, Boyd v. Commissioner, 101 T.C. 365, 369 (1993), and "affected items", items affected by the treatment of partnership items (e.g. certain *308 additions to tax), can only be assessed following the conclusion of the partnership proceeding. See sec. 6225(a); Maxwell v. Commissioner, 87 T.C. 783, 791 n.6 (1986). On September 19, 1994, the parties filed a Stipulation of Settled Issues concerning petitioner's investment in Efron II. The Stipulation provides that petitioner is entitled to deduct $ 2,166 of the amount disallowed by respondent with respect to petitioner's investment in Efron II, and that petitioner concedes the remaining amount disallowed of $ 8,082, and also states: As a result of this stipulation, all non-TEFRA issues pertaining to Efron Investors II Partnership for 1982 have been resolved. The TEFRA issues pertaining to Efron Investors II as a tier of Dickinson Recycling Associates, a TEFRA partnership, will be resolved in a separate proceeding.
The Stipulation reflects the requirement that partnership items and affected items (TEFRA items) related to Efron II's investment *309 in Dickinson Recycling Associates will be resolved in a proceeding other than this proceeding. Accordingly, all issues with respect to the taxable year 1982, as set forth in the pleadings and the notice of deficiency that form the basis for our jurisdiction in this case, have been resolved. The remaining issues relate to petitioner's investment in Clearwater through his investment in EI in 1981. The issues for decision with respect to 1981 are: (1) Whether expert reports and testimony offered by respondent are admissible into evidence; (2) whether petitioner is entitled to claimed deductions and tax credits with respect to Clearwater as passed through EI to petitioner; (3) whether petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations under section 6653(a)(1) and (2); (4) whether petitioner is liable for the addition to tax under section 6659 for underpayment of tax attributable to valuation overstatement; and (5) whether petitioner is liable for increased interest under section 6621(c). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. *310 Petitioner resided in Hammond, Indiana, when his petition was filed. During the years in issue, petitioner was an insurance agent and broker. Petitioner's gross income for 1981 from wages, interest, dividends, capital gains, his insurance business, and other sources was in excess of $ 70,000 and, consequently, in the absence of significant deductions or credits, as a single person, he was subject to payment of Federal income taxes in substantial amounts. Petitioner did not testify at trial. Therefore, the facts have been found from a record consisting of stipulations, exhibits, and the testimony of persons other than petitioner. The testimony offered at trial concerns EI and the Clearwater transaction generally, rather than petitioner specifically. Petitioner is a limited partner in EI, which is a limited partner in Clearwater. Clearwater is the same recycling partnership that we considered in Provizer v. Commissioner, T.C. Memo. 1992-177. The underlying deficiency for 1981 in this case resulted from respondent's disallowance of claimed losses and tax credits that were passed through both Clearwater and EI to petitioner.[5]
*311 Petitioner has stipulated substantially the same facts concerning the underlying transactions as we found in Provizer v. Commissioner, supra.[6] Those facts may be summarized as follows. In 1981, Packaging Industries, Inc. (PI), manufactured and sold six Sentinel expanded polyethylene (EPE) recyclers to ECI Corp. for $ 5,886,000 ($ 981,000 each). ECI Corp., in turn, resold the recyclers to F & G Corp. for $ 6,976,000 ($ 1,162,666 each). F & G Corp. then leased the recyclers to Clearwater, which licensed the recyclers to FMEC Corp., which sublicensed them back to PI. All of the monthly payments required among the entities in the above transactions offset each other. These transactions were done simultaneously. We refer to these transactions collectively as the Clearwater transaction. The fair market value of a Sentinel EPE recycler in 1981 was not in excess of $ 50,000. *312 PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap. The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC based on the quality and amount of recycled scrap. In 1981, petitioner acquired a 1.596-percent limited partnership interest in EI, and EI acquired a 43.313-percent limited partnership interest in Clearwater. As a result of passthrough from Clearwater and EI, on his 1981 Federal income tax return petitioner deducted an operating loss in the amount of $ 4,470 and claimed investment tax and business energy credits totaling $ 9,644. Respondent disallowed petitioner's claimed operating loss and credits related to EI's investment in Clearwater for 1981. [7]
*313 EI is an Indiana limited partnership that was formed in May of 1981 by Morton L. Efron (Efron) as the general partner and Real Estate Financial Corp. (REFC) as the initial limited partner. Fred Gordon (Gordon) is the president of REFC, which is owned by members of Gordon's family. EI was formed to acquire limited partnership interests in an office building in Buffalo, New York (the office building), and a shopping center in Haslett, Michigan (the shopping center). In contemplation of these ventures, EI prepared a private placement memorandum (the original offering memorandum) and distributed it to potential limited partners. At some time in late 1981, EI abandoned the contemplated investment in the shopping center and substituted limited partnership interests in Clearwater and a K- Mart shopping center in Swansea, Massachusetts (the K-Mart investment). The revised investment objectives were presented in a revised offering memorandum (the revised offering memorandum). The revised offering memorandum indicated that EI intended to invest in 100 percent of the limited partnership interests in the office building (10 units), 43.75 percent of the limited partnership interests in Clearwater *314 (7 units), and 15.625 percent of the limited partnership interests in the K-Mart investment (2- 1/2 units). Potential EI limited partners were informed of the change in EI's investment objectives through informal conversations and the revised offering memorandum. MFA Corp. (MFA) is the ministerial agent for EI. Efron owns 50 percent of the stock of MFA, and REFC owns the remaining 50 percent. The revised offering memorandum states that Efron, as general partner of EI, and MFA, as the ministerial agent for EI, will receive substantial fees, compensation, and profits from EI. The contemplated payments to MFA include: (1) $ 100,000 for supervisory management of the office building and ministerial fees; (2) $ 100,000-$ 125,000 as loan commitment fees; (3) $ 25,000 for note collection guarantees; and (4) a maximum of $ 100,750 in investment advisory fees. In addition, MFA was also the ministerial agent for the office building limited partnership and, according to the revised offering memorandum, received substantial payments in that capacity. Efron obtained financing for the EI investments through local banks. Some of the limited partners in EI made a cash downpayment to EI and then *315 signed installment promissory notes for the remainder of the purchase price. Thereafter, Efron pledged any promissory notes received from limited partners as security for loans to EI. In addition to lending funds directly to EI, the banks also offered loans to individual limited partners for the downpayments needed with respect to the EI investments. Petitioner subscribed to purchase one-fourth of a limited partnership unit ($ 25,000) in EI. He acquired his interest in EI in exchange for a cash payment in the amount of $ 10,081.25 and a promissory note bearing interest at the rate of 11 percent per year with payments due in the amounts of $ 10,451.25 and $ 4,467.50 on January 15, 1982, and January 15, 1983, respectively. According to the offeree questionnaire completed by petitioner, he learned of EI and the Clearwater transaction from Efron. Efron was the general partner of EI and owned limited partnership interests in EI through Efron and Efron Real Estate, a partnership owned by Efron and his wife, and AMBI Real Estate, a partnership owned by Efron and his sister. EI was the first partnership for which Efron served as a general partner. Efron organized EI so that he could earn *316 legal fees and fees for managing the partnership. He received compensation and fees as the general partner of EI and as a 50-percent shareholder of MFA. After EI abandoned the investment in the shopping center, Efron learned of the Clearwater transaction from Gordon. In 1981 Gordon was counsel to EI, to Efron as the general partner of EI, to Efron personally, and to MFA. He and Efron have known each other since meeting at the University of Michigan in 1955. In the early 1960's Efron and Gordon began investing together in the stock market, real estate, business loans, and other investments. Gordon is an attorney who holds a master's degree in business administration and at one time was employed by the Internal Revenue Service. Prior to the date of the Clearwater private placement offering, Gordon had experience involving the evaluation of tax shelters. Gordon was paid a fee in the amount of 10 percent of some investments he guided to Clearwater; however, he did not receive a fee directly from Clearwater for the EI investments. Efron was aware that Gordon received commissions from the sale of some units in recycling ventures. [8]Gordon recommended investing in the Clearwater offering *317 to the investors in EI, as well as to some of Gordon's other clients. *318 In the EI offeree questionnaire completed by petitioner, petitioner stated his educational background as follows: "B.S. Notre Dame, 1947, MBA Michigan, 1949 LIMI Purdue 1954, CLU 1955, CFP 1975". In addition, on the offeree questionnaire, petitioner indicated that in 1981 he was a "Professor on the business staff at Indiana University Northwest." The educational background listed on petitioner's offeree questionnaire for EI demonstrates that petitioner has extensive formal training in investments. In addition, on the offeree questionnaire, petitioner indicates that he has invested in "real estate, oil and gas, stocks, bonds, mutual funds" and a real estate syndication or "other investments offering possible tax shelter". He identified his previous tax shelter investments as "Oil and gas". However, petitioner does not have any education or work experience in plastics recycling or plastics materials. Petitioner did not independently investigate the Sentinel recyclers, and he did not see a Sentinel recycler or any other type of plastics recycler prior to participating in the recycling ventures. OPINION In Provizer v. Commissioner, T.C. Memo. 1992-177, *319 a test case involving the Clearwater transaction and another tier partnership, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $ 50,000, (2) held that the Clearwater transaction was a sham because it lacked economic substance and a business purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c). In reaching the conclusion that the Clearwater transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers. Although petitioner has not agreed to be bound by the Provizer opinion, he has stipulated that his investment in the Sentinel EPE recyclers was similar to the investment described in Provizer, and, pursuant to his request, we have taken judicial notice of our opinion in the Provizer case. Petitioner invested in EI, a tier partnership that invested in *320 Clearwater. The underlying transaction in this case (the Clearwater transaction), and the Sentinel EPE recyclers considered in this case, are the same transaction and machines considered in Provizer. Issue 1. Admissibility of Expert Reports and Testimony
Before addressing the substantive issues in this case, we resolve an evidentiary issue. At trial, respondent offered in evidence the expert opinions and testimony of Steven Grossman (Grossman) and Richard Lindstrom (Lindstrom). At trial and in his reply brief, petitioner objects to the admissibility of the testimony and reports. The expert reports and testimony of Grossman and Lindstrom are identical to the testimony and reports in Fine v. Commissioner, T.C. Memo. 1995-222. In addition, petitioner's arguments with respect to the admissibility of the expert testimony and reports are identical to the arguments made in the Fine case. For discussions of the reports, see Fine v. Commissioner, supra, and Provizer v. Commissioner, supra.
For reasons set forth in Fine v. Commissioner, supra, *321 we hold that the reports and testimony of Grossman and Lindstrom are relevant and admissible and that Grossman and Lindstrom are experts in the fields of plastics, engineering, and technical information. We do not, however, accept Grossman or Lindstrom as experts with respect to the ability of the average person, who has not had extensive education in science and engineering, to conduct technical research, and we have limited our consideration of their reports and testimony to the areas of their expertise. We also hold that Grossman's report meets the requirements of Rule 143(f). Issue 2. Deductions and Tax Credits With Respect to EI and Clearwater
On his 1981 Federal income tax return, petitioner claimed the following with respect to his investment in EI and EI's investment in Clearwater: (1) An operating loss in the amount of $ 4,470; (2) an investment tax credit in the amount of $ 4,822; and (3) a business energy credit in the amount of $ 4,822. Respondent disallowed these claimed deductions and tax credits. The underlying transaction in this case is substantially identical in all respects to the transaction in Provizer v. Commissioner, supra. *322 The parties have stipulated the facts concerning the deficiency essentially as set forth in our Provizer opinion, and, at petitioner's request, we have taken judicial notice of our opinion in the Provizer case. Based on this record, we hold that the Clearwater transaction was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers. Accordingly, respondent is sustained on the issue with respect to the underlying deficiency. Moreover, we note that petitioner has stated his concession of this issue on brief. The record plainly supports respondent's determination regardless of such concession. For a detailed discussion of the facts and the applicable law, see Provizer v. Commissioner, supra.
Issue 3. Sec. 6653(a) Negligence
In her first amendment to answer, respondent asserted that petitioner was liable for the negligence additions to tax under section 6653(a)(1) and (2) for 1981. Because these additions to tax were raised for the first time in respondent's amendment to answer, respondent bears the burden of proof on this issue. Rule 142(a); Vecchio v. Commissioner, 103 T.C. 170, 196 (1994). *323 Section 6653(a)(1) provides for an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations. For 1981, section 6653(a)(2) provides for an addition to tax equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business. See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973). Petitioner did not testify at trial. Through his briefs, he contends that he was reasonable in claiming deductions and credits with respect to EI's investment in Clearwater. To support his contention, petitioner alleges the following: (1) That claiming the deductions and credits with respect to EI's investment *324 in Clearwater was reasonable in light of the supposed oil crisis in the United States in 1981; and (2) that in claiming the deductions and credits, petitioner specifically relied upon Efron. [9] In addition, petitioner argues that respondent has failed to carry her burden of showing that petitioner is liable for the negligence additions to tax. Petitioner contends that he was reasonable in claiming the deductions and credits related to EI's investment in Clearwater because of a supposed oil crisis in the United States during 1981. Petitioner argues, in general terms, that the alleged oil crisis in the United States in 1981, and the media coverage thereof, excuses him from the negligence additions to tax *325 with respect to his investment in Clearwater through EI. Petitioner failed to explain how the so-called oil crisis, or the media coverage thereof, provided a reasonable basis for him to invest in Clearwater and claim the associated tax deductions and credits. We find petitioner's vague, general claims concerning the so-called oil crisis to be without merit. Petitioner's reliance on Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994), is misplaced. The facts in the Krause case are distinctly different from the facts of this case. In the Krause case, the taxpayers invested in limited partnerships whose investment objectives concerned enhanced oil recovery (EOR) technology. The Krause opinion notes that during the late 1970's and early 1980's, the Federal Government adopted specific programs to aid research and development of EOR technology. Id. at 135-136. In holding that the taxpayers in the Krause case were not liable for the negligence additions to tax, this Court noted that one of the Government's expert witnesses *326 acknowledged that "investors may have been significantly and reasonably influenced by the energy price hysteria that existed in the late 1970s and early 1980s to invest in EOR technology." Id. at 177. In the present case, however, one of respondent's experts, Grossman, noted that the price of plastics materials is not directly proportional to the price of oil, that less than 10 percent of crude oil is utilized for making plastics materials, and that studies have shown that "a 300% increase in crude oil prices results in only a 30 to 40% increase in the cost of plastic products." While EOR was, according to our Krause opinion, in the forefront of national policy and the media during the late 1970's and early 1980's, there is no showing in this record that the supposed energy crisis would provide a reasonable basis for investing in recycling of polyethylene. Moreover, the taxpayers in the Krause opinion were experienced in or investigated the oil industry and EOR technology specifically. One of the taxpayers in the Krause case undertook significant investigation of the proposed investment including researching EOR technology. The other taxpayer *327 was a geological and mining engineer whose work included research of oil recovery methods and who hired an independent geologic engineer to review the offering materials. Id. at 166. In the present case, petitioner was not experienced or educated in plastics recycling or plastics materials, and he did not independently investigate the Sentinel recyclers. We consider petitioner's arguments with respect to the Krause case inapplicable here. Moreover, during 1980 and 1981, in addition to the media coverage of the so-called oil crisis, there was "extensive continuing press coverage of questionable tax shelter plans." Zmuda v. Commissioner, 731 F.2d 1417, 1422 (9th Cir. 1984), affg. 79 T.C. 714 (1982). On his 1981 Federal income tax return, petitioner claimed investment tax and business energy credits related to Clearwater totaling $ 9,644, while his investment in Clearwater through EI was less than $ 6,000. [10] Therefore, like the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, "except for a few weeks at the beginning, * * * [petitioner] never had any *328 money in the [Clearwater] deal." In light of the large tax benefits claimed on petitioner's 1981 Federal income tax return and petitioner's alleged observation of the media, we conclude that further investigation of the investment clearly was required. A reasonably prudent person would have asked a qualified independent tax adviser if this windfall were not too good to be true. McCrary v. Commissioner, 92 T.C. 827, 850 (1989). In fact, on brief, petitioner argues that he consulted a qualified adviser and relied upon him in claiming the disallowed losses and tax credits. Petitioner argues that his reliance on the advice of Efron insulates him from the negligence additions to tax. Under some circumstances a taxpayer may avoid liability for the additions to *329 tax for negligence under section 6653(a) if reasonable reliance on a competent professional adviser is shown. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Such circumstances are not present in this case. Moreover, reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.; see Weis v. Commissioner, 94 T.C. 473, 487 (1990); Ewing v. Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974). We have rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business *330 aspects of the contemplated venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Steerman v. Commissioner, T.C. Memo. 1993-447. The record does not show that Efron possessed any special qualifications or professional skills in the recycling or plastics industries. In addition, Efron did not hire anyone with plastics or recycling expertise to evaluate the Clearwater transaction. In evaluating the Clearwater transaction, Efron contends that he relied upon (1) the offering materials, (2) Barry Swartz, an accountant, (3) various bankers who loaned funds to EI, and (4) Gordon for his expertise in taxation, finance, and investments. Although Efron testified that when making investments he knows "enough to go get an expert or somebody that knows something", Efron did not consult any plastics engineering or technical experts with respect to EI's investment in Clearwater. Efron relied heavily upon Gordon in deciding to include Clearwater as a part of the revised EI offering. Efron was aware that Gordon was an offeree representative and received commissions *331 as such from other recycling investments. Gordon testified that he did not directly receive a sales commission with respect to the EI investment in Clearwater. The record with respect to the payment of commissions on this investment is inconclusive. See supra note 8. In evaluating the Clearwater transaction Gordon relied on the offering materials and on discussions with persons involved in the transaction. Efron does not suggest that Swartz or the bankers had any peculiar or specialized knowledge of the Clearwater transaction beyond that of any accountant or banker who had read the prospectus. According to the EI offeree questionnaire completed by petitioner, he first became aware of the EI investments through Efron. In his opening brief, petitioner contends that he relied on Efron in making his investment in EI and that he should be relieved of the negligence additions to tax under section 6653(a) because of his alleged reliance on Efron. Efron testified that he advised every limited partner in EI to talk to an independent adviser. The record is devoid of any further details concerning the advice petitioner received from Efron. The offering memorandum and the revised offering *332 memorandum disclosed the fact that Efron was receiving substantial compensation and fees as the general partner of EI and as a 50-percent owner of MFA. In addition, both of the EI offering memoranda specifically warned potential investors that they were "not to consider the contents of * * * [the offering memoranda] or any communication from the partnership or its general partners as legal or tax advice", and Efron testified that he advised every limited partner in EI to talk to an independent adviser. In our view petitioner's purported reliance on Efron was not reasonable, in good faith, and based on full disclosure. Accordingly, we hold that petitioner is not entitled to relief from the negligence additions to tax under section 6653(a) because of his alleged reliance on Efron. Petitioner's reliance on Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, is misplaced. The facts in the Heasley case are distinctly different from the facts of this case. In the Heasley case the taxpayers were not educated beyond high school, while in the instant case petitioner was a financially successful, *333 sophisticated, highly educated insurance agent and broker who was also a certified financial planner. In addition, on his EI offeree questionnaire, petitioner indicated that he had extensive previous investment experience in real estate, oil and gas, stocks, bonds, and mutual funds. We consider petitioner's arguments with respect to the Heasley case inapplicable. When petitioner claimed the disallowed deductions and tax credits, he had little, if any, knowledge of the plastics or recycling industries. Petitioner did not independently investigate the Sentinel EPE recyclers. Through his investment in EI, petitioner paid approximately $ 6,000 to Clearwater and claimed a tax deduction of $ 4,470 and tax credits in the amount of $ 9,644 with respect to that investment for the first year of the investment alone. Under the circumstances of this case, petitioner should have known better than to claim the large deductions and tax credits with respect to Clearwater on his 1981 Federal income tax return. Respondent introduced evidence, including expert reports, to establish the lack of economic substance of the Clearwater transaction. We concluded on the basis of this record that the Clearwater *334 transaction was a sham and lacked economic substance. In addition, in Provizer v. Commissioner, T.C. Memo. 1992-177, an opinion of which we took judicial notice pursuant to petitioner's request, we considered the Clearwater transaction and concluded the same. In our view, the lack of economic substance in the Clearwater transaction could have been readily discovered with a modicum of due care by a taxpayer with petitioner's business education and investment experience. We conclude that petitioner was negligent in claiming the deductions and credits with respect to EI's investment in Clearwater on his 1981 Federal income tax return. We hold, upon consideration of the entire record, that petitioner is liable for the negligence additions to tax under the provisions of section 6653(a)(1) and (2) for 1981. Issue 4. Sec. 6659 Valuation Overstatement
In the notice of deficiency, respondent determined that petitioner was liable for an addition to tax in the amount of $ 3,559 for valuation overstatement under section 6659 on underpayment of his 1981 Federal income tax. In her opening brief, respondent asserted that petitioner was liable for an addition *335 to tax in the amount of $ 2,893 under section 6659 on the underpayment of his 1981 Federal income tax attributable to the investment tax credit and business energy credit claimed with respect to EI and Clearwater. As noted earlier in this opinion, the amount in dispute in this case is the reduced amount asserted in respondent's opening brief. Petitioner has the burden of proving that respondent's determination of an addition to tax is erroneous. Rule 142(a); Rybak v. Commissioner, 91 T.C. 524, 566 (1988). The underlying facts of this case with respect to this issue are substantially the same as those in Fine v. Commissioner, T.C. Memo. 1995-222. In addition, petitioner's arguments with respect to this issue are identical to the arguments made in the Fine case. For reasons set forth in the Fine opinion, we hold that petitioner is liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed credits for 1981. Issue 5. Sec. 6621(c) Tax-Motivated Transactions In her first amendment to answer, respondent asserted that interest on deficiencies *336 for 1981 accruing after December 31, 1984, would be calculated under section 6621(c). Because this addition to tax was raised for the first time in respondent's amendment to answer, respondent bears the burden of proof on this issue. Rule 142(a); Vecchio v. Commissioner, 103 T.C. at 196. The annual rate of interest under section 6621(c) equals 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to tax-motivated transactions. An underpayment is substantial if it exceeds $ 1,000. Sec. 6621(c)(2). The underlying facts of this case with respect to this issue are substantially the same as those in Fine v. Commissioner, supra. In addition, petitioner's arguments on brief with respect to this issue are verbatim copies of the arguments in the taxpayers' briefs in the Fine case. Unlike the Fine case where petitioner had the burden of proof with respect to the section 6621(c) increased interest, respondent has the burden of proof on this issue in this case. On this record, respondent has met her burden of proving that for 1981 petitioner made a substantial *337 underpayment attributable to tax-motivated transactions. Accordingly, for reasons set forth in the Fine opinion, we hold that the section 6621(c) increased rate of interest applies for 1981. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code in effect for the tax years at issue, unless otherwise stated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. In her amended answer, respondent calculated the negligence additions to tax based upon a deficiency in petitioner's 1981 Federal income tax in the reduced amount of $ 11,157.↩
3. Sec. 6621(c) was repealed by sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, 103 Stat. 2106, 2399, effective for tax returns due after Dec. 31, 1989 (sec. 7721(d) of the Act). The repeal does not affect the instant case. The annual rate of interest under sec. 6621(c) for interest accruing after Dec. 31, 1984, equals 120 percent of the interest payable under sec. 6601↩ with respect to any substantial underpayment attributable to tax-motivated transactions.
4. See secs. 761, 6231(a)(1).↩
5. Other adjustments to petitioner's 1981 Federal income tax are computational.↩
6. The parties did not stipulate certain facts concerning the Provizers, facts regarding the expert opinions, and other matters that we consider of minimal significance. Although the parties did not stipulate our findings regarding the expert opinions, they stipulated our ultimate finding of fact concerning the fair market value of the recyclers during 1981.↩
7. In the notice of deficiency, respondent allowed an investment tax credit in the amount of $ 914 and, therefore, disallowed investment tax and business energy credits in the amount of $ 9,648. This appears to be merely a computational error.↩
8. The Clearwater offering memorandum states that the partnership will pay sales commissions and fees to offeree representatives in an amount equal to 10 percent of the price paid by the investor represented by such person. The offering memorandum further states that if such fees are not paid "they will either be retained by the general partner as additional compensation if permitted by applicable state law, or applied in reduction of the subscription price." EI's Schedule K-1 for 1981 shows that EI paid full price, $ 350,000, for its seven units of Clearwater, so the 10-percent commission was not applied to reduce the subscription price. Gordon specifically stated that in the case of EI he did not directly receive the sales commission. Efron expressed doubt that he individually had been an offeree representative in connection with Clearwater or any other transaction. There are suggestions that the commission might have been paid to MFA or offeree representatives of individual investors, but the record on this subject is inconclusive. Petitioner did not identify an offeree representative with respect to the EI investment.↩
9. In his opening brief, petitioner argues that he relied upon Efron and that such reliance was reasonable. In his reply brief, however, petitioner argues that respondent has failed to carry her burden of proof with respect to this issue because she failed to prove any advisers upon whom petitioner may have relied.↩
10. Calculated as follows: EI's Investment in Clearwater $ 350,000 X Petitioner's Share of EI 1.596% = $ 5,586 EI's Investment in Clearwater $ 350,000 X EI's Total Investment $ 1,550,000 X Petitioner's Investment $ 25,000 = $ 5,645↩