T.C. Memo. 1995-489


UNITED STATES TAX COURT


ROBERT H. AVELLINI, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 19176-90.          Filed October 10, 1995.


<u>Lois C. Blaesing</u> and <u>Chauncey W. Tuttle, Jr.</u>, for
petitioner.

<u>Mary P. Hamilton</u>, <u>Paul Colleran</u>, and <u>William T. Hayes</u>, for
respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

DAWSON, <u>Judge</u>: This case was assigned to Special Trial
Judge Norman H. Wolfe pursuant to the provisions of section

7443A(b)(4) and Rules 180, 181, and 183.[1] The Court agrees with and adopts the opinion of the Special Trial Judge, which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

WOLFE, Special Trial Judge: This case is part of the Plastics Recycling group of cases. For a detailed discussion of the transactions involved in the Plastics Recycling cases, see Provizer v. Commissioner, T.C. Memo. 1992-177, affd. without published opinion 996 F.2d 1216 (6th Cir. 1993). The facts of the underlying transaction in this case are substantially identical to those in the Provizer case. Through a second tier partnership, Efron Investors (EI), petitioner invested in the Clearwater Group limited partnership (Clearwater), the same partnership considered in the Provizer case. Pursuant to petitioner's request at trial, this Court took judicial notice of our opinion in the Provizer case.

In a notice of deficiency, respondent determined deficiencies in petitioner's 1981 and 1982 Federal income taxes in the respective amounts of $13,770 and $4,502, and an addition to tax for 1981 in the amount of $2,848.33 under section 6659 for valuation overstatement. Respondent also determined that interest on deficiencies in petitioner's 1981 and 1982 Federal

---

[1]   All section references are to the Internal Revenue Code in effect for the tax years in issue, unless otherwise stated. All Rule references are to the Tax Court Rules of Practice and Procedure.

income taxes accruing after December 31, 1984, would be calculated at 120 percent of the statutory rate under section 6621(c).[2]  In addition to the above deficiencies and additions to tax, in an amended answer, respondent asserted additions to tax for 1981 in the amount of $689 under section 6653(a)(1) for negligence and under section 6653(a)(2) in an amount equal to 50 percent of the interest due on the underpayment attributable to negligence.

The issues for decision are:  (1) Whether petitioner is entitled to deductions claimed on his 1982 Federal income tax return with respect to his interest in the partnership Efron Investors II and whether petitioner is liable for increased interest under section 6621(c) with respect to 1982; (2) whether expert reports and testimony offered by respondent are admissible into evidence; (3) whether petitioner is entitled to claimed deductions and tax credits with respect to Clearwater as passed through EI to petitioner; (4) whether petitioner is liable for additions to tax under section 6653(a)(1) and (2) for 1981; (5) whether petitioner is liable for the addition to tax under

---

[2]    This section was repealed by sec. 7721(b) of the Omnibus Budget Reconciliation Act of 1989 (OBRA 89), Pub. L. 101-239, 103 Stat. 2106, 2399, effective for tax returns due after Dec. 31, 1989, OBRA 89, sec. 7721(d), 103 Stat. 2400.  The repeal does not affect the instant case.  The annual rate of interest under sec. 6621(c) for interest accruing after Dec. 31, 1984, equals 120 percent of the interest payable under sec. 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.

section 6659 for underpayment of tax attributable to valuation overstatement; and (6) whether petitioner is liable for increased interest under section 6621(c) for 1981.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulated facts and attached exhibits are incorporated by this reference. Petitioner resided in Chicago, Illinois, when his petition was filed. He was a professional football player in the National Football League and played quarterback for the Chicago Bears from 1975 through 1984.

Petitioner is a limited partner in EI, which is a limited partner in the Clearwater limited partnership. The Clearwater limited partnership is the same recycling partnership that we considered in Provizer v. Commissioner, supra. The underlying deficiency for 1981 in this case resulted from respondent's disallowance of claimed losses and tax credits that were passed through both Clearwater and EI to petitioner.

Petitioner has stipulated substantially the same facts concerning the underlying transactions as we found in Provizer v. Commissioner, supra.[3] Those facts may be summarized as follows. In 1981, Packaging Industries, Inc. (PI), manufactured and sold

[3] The parties did not stipulate certain facts concerning the Provizers, facts regarding the expert opinions, and other matters that we consider of minimal significance. Although the parties did not stipulate our findings regarding the expert opinions, they stipulated our ultimate finding of fact concerning the fair market value of the recyclers during 1981.

six Sentinel expanded polyethylene (EPE) recyclers to ECI Corp. for $5,886,000 ($981,000 each). ECI Corp., in turn, resold the recyclers to F & G Corp. for $6,976,000 ($1,162,666 each). F & G Corp. then leased the recyclers to Clearwater, which licensed the recyclers to FMEC Corp., which sublicensed them back to PI. All of the monthly payments required among the entities in the above transactions offset each other. These transactions were done simultaneously. We refer to these transactions collectively as the Clearwater transaction. The fair market value of a Sentinel EPE recycler in 1981 was not in excess of $50,000.

PI allegedly sublicensed the recyclers to entities that would use them to recycle plastic scrap. The sublicense agreements provided that the end-users would transfer to PI 100 percent of the recycled scrap in exchange for a payment from FMEC based on the quality and amount of recycled scrap.

In 1981, petitioner acquired a 3.194-percent limited partnership interest in EI, and EI acquired a 43.313-percent limited partnership interest in Clearwater. As a result of passthrough from Clearwater and EI, on his 1981 Federal income tax return petitioner deducted an operating loss in the amount of $8,945 and claimed a business energy credit in the amount of $9,651.[4] Respondent disallowed petitioner's claimed operating

---

[4] On his 1981 Federal income tax return, petitioner did not include the purported value of the Clearwater recyclers in his claimed qualified investment for purposes of the investment tax

(continued...)

loss and business energy credit related to EI's investment in Clearwater for 1981.

EI is an Indiana limited partnership that was formed in May of 1981 by Morton L. Efron (Efron) as the general partner and Real Estate Financial Corp. (REFC) as the initial limited partner. Fred Gordon (Gordon) is the president of REFC, which is owned by members of Gordon's family.

EI was formed to acquire limited partnership interests in an office building in Buffalo, New York (the office building), and a shopping center in Haslett, Michigan (the shopping center). In contemplation of these ventures, EI prepared a private placement memorandum (the original offering memorandum) and distributed it to potential limited partners. At some time in late 1981, EI abandoned the contemplated investment in the shopping center and substituted limited partnership interests in Clearwater and a K-Mart shopping center in Swansea, Massachusetts (the K-Mart investment). The revised investment objectives were presented in a revised offering memorandum (the revised offering memorandum). The revised offering memorandum indicated that EI intended to invest in 100 percent of the limited partnership interests in the office building (10 units), 43.75 percent of the limited partnership interests in Clearwater (7 units), and 15.625 percent

---

[4](...continued)
credit.

of the limited partnership interests in the K-Mart investment (2-1/2 units).

MFA Corp. (MFA) is the ministerial agent for EI.  Efron owns 50 percent of the stock of MFA and REFC owns the remaining 50 percent.  The revised offering memorandum provides that Efron, as general partner of EI, and MFA, as the ministerial agent for EI, will receive substantial fees, compensation, and profits from EI. The contemplated payments to MFA include:  (1) $100,000 for supervisory management of the office building and ministerial fees; (2) $100,000-$125,000 as loan commitment fees; (3) $25,000 for note collection guarantees; and (4) a maximum of $100,750 in investment advisory fees.  In addition, MFA was also the ministerial agent for the office building limited partnership and, according to the revised offering memorandum, received substantial payments in that capacity.

Efron obtained financing for the EI investments through local banks.  Like a number of limited partners in EI, petitioner made a cash downpayment to EI and then signed an installment promissory note for the remainder of the purchase price.  Thereafter, Efron pledged any promissory notes received from limited partners as security for loans to EI.  In addition to lending funds directly to EI, the banks also offered loans to individual limited partners for the downpayments needed with respect to the EI investments.

Petitioner subscribed to purchase one-half of a limited partnership unit ($50,000) in EI. Petitioner could not recall if he had borrowed the funds to invest in EI.

Through a teammate on the Chicago Bears professional football team, petitioner met Efron at a cocktail party. He learned of EI and the Clearwater transaction from Efron.

Efron was the general partner of EI. In addition, Efron owned limited partnership interests in EI through Efron and Efron Real Estate, a partnership owned by Efron and his wife, and AMBI Real Estate, a partnership owned by Efron and his sister. EI was the first partnership for which Efron served as a general partner. Efron organized EI so that he could earn legal fees and fees for managing the partnership. He received compensation and fees as the general partner of EI and as a 50-percent shareholder of MFA. Efron learned of the Clearwater transaction from Gordon.

In 1981 Gordon was counsel to EI, to Efron as the general partner of EI, to Efron personally, and to MFA. He and Efron have known each other since meeting at the University of Michigan in 1955. In the early 1960's Efron and Gordon began investing together in the stock market, real estate, business loans, and other investments. Gordon is an attorney who holds a master's degree in business administration and at one time was employed by the Internal Revenue Service. Prior to the date of the Clearwater private placement offering, Gordon had experience involving the evaluation of tax shelters. Gordon was paid a fee

in the amount of 10 percent of some investments he guided to Clearwater; however, he did not receive a fee directly from Clearwater for the EI investments. Efron was aware that Gordon received commissions from the sale of some units in recycling ventures.[5] Gordon recommended investing in the Clearwater offering to the investors in EI, as well as to some of Gordon's other clients.

Petitioner attended the University of Maryland from 1971 through 1975, at which time he was drafted into the National Football League by the Chicago Bears. When he was drafted, petitioner needed only 12 additional credit hours to earn his bachelor of science degree in business management. In 1991, he returned to the University of Maryland and received his degree.

Petitioner does not have any education or work experience in plastics recycling or plastics materials. He did not

---

[5] The Clearwater offering memorandum states that the partnership will pay sales commissions and fees to offering representatives in an amount equal to 10 percent of the price paid by the investor represented by such person. The offering memorandum further states that if such fees are not paid "they will either be retained by the general partner as additional compensation if permitted by applicable state law, or applied in reduction of the subscription price." The Efron Investors' Schedule K-1 for 1981 shows that EI paid full price, $350,000, for its seven units of Clearwater, so the 10-percent commission was not applied to reduce the subscription price. Gordon specifically stated that in the case of EI he did not directly receive the sales commission. Efron expressed doubt that he individually had been an offeree representative in connection with Clearwater or any other transaction. There are suggestions that the commission might have been paid to MFA or offeree representatives of individual investors, but the record on this subject is inconclusive.

independently investigate the Sentinel recyclers or see a Sentinel recycler or any other type of plastic recycler prior to participating in the recycling ventures.

At the conclusion of the trial in this case, respondent's counsel stated that there was a "non-plastics issue in this case" that would be resolved without trial. Counsel requested that the record remain open for submission of a stipulation of settled issues, and the Court ordered that the record remain open only for submission of such stipulation in the "other issue".

The deficiency notice to petitioner for 1982 concerned petitioner's investment in a partnership designated as Efron Investors II (Efron II). Efron II invested in a shopping center and also in Dickinson Recycling Associates, a TEFRA partnership (a partnership subject to sections 6221 through 6231, the TEFRA provisions) that was involved in the Plastics Recycling transactions. Fred Gordon, as counsel for petitioner, and Timothy Murphy of respondent's Detroit District Counsel's Office negotiated the resolution of the shopping center issues and each signed the following proposed stipulation of agreed adjustments in this case:

> THE PARTIES HEREBY STIPULATE the following terms in settlement of the adjustments in Respondent's Notice of Deficiency pertaining to the petitioner's interest in Efron Investors II Partnership for 1982:
>
> 1. The respondent in its Notice of Deficiency disallowed $10,248.00 of petitioner's claimed losses relative to Efron Investors II Partnership.

2.   The petitioner is allowed to deduct $2,166.00 of the amount disallowed by the respondent.   The petitioner concedes the remaining amount disallowed of $8,082.00.

3.   As a result of this stipulation, all issues pertaining to Efron Investors II Partnership for 1982 have been resolved.

The parties agree to this STIPULATION OF AGREED ADJUSTMENTS.

Although Mr. Murphy signed the document on the space provided for the representative of the acting Chief Counsel of respondent, he did not submit the original to the Court but forwarded it to respondent's counsel in charge of the plastics recycling issues in this case so they could review and coordinate the presentation of the case.  Respondent's supervising counsel considered the language of the stipulation document to be subject to misinterpretation and refused to offer it into evidence at trial.  Instead, respondent's counsel requested that the record be held open for submission of a stipulation of settled issues at a later date.  Petitioner's counsel made no objection, and this Court granted the request.

On August 10, 1994, respondent's counsel forwarded to petitioner's counsel a revised proposed stipulation of settled issues clarifying that the stipulation resolved all non-TEFRA issues pertaining to Efron II for 1982 and that the "TEFRA issues pertaining to Efron Investors II as a tier of Dickinson Recycling Associates, a TEFRA partnership, will be resolved in a separate proceeding."  Petitioner's counsel never executed the revised

proposed stipulation of settled issues in this case although they did execute such a revision at about the same time in another case involving substantially similar circumstances. See Reister v. Commissioner, T.C. Memo. 1995-305.

Dickinson Recycling Associates, Sam Winer, Tax Matters Partner v. Commissioner, docket No. 13191-89 (Dickinson), was calendared for trial at a special session of the Court in March 1994, in Detroit, Michigan, the same session at which the instant case was tried. The Dickinson partnership is a partnership subject to the TEFRA provisions at sections 6221 through 6231. Efron II, a limited partnership formed in June 1982, invested in a limited partnership interest in Dickinson, and consequently, is a second tier investor in a plastics recycling transaction. The Dickinson case was resolved without trial, and this Court's decision was entered on February 23, 1994, and became final on May 24, 1994.

On June 9, 1995, petitioner filed a document which the Court has designated as petitioner's motion to reopen record. In such motion, petitioner urges that the Court require respondent to produce the proposed stipulation of agreed adjustments which petitioner contends both parties executed prior to trial and that we bind respondent to petitioner's interpretation of that document not only as to the shopping center issues, but also as to all other issues, including the treatment of petitioner's interest in Dickinson through Efron II.

On July 11, 1995, respondent filed respondent's response to petitioner's motion to reopen record in which respondent argues that this Court has no jurisdiction over TEFRA partnership items in this case and, in any event, respondent did not enter into the settlement sought by petitioner.

On July 17, 1995, respondent filed a motion to dismiss for lack of jurisdiction and to strike the claims relating to the deficiency attributable to partnership items. Petitioner filed petitioner's response to respondent's motion on July 18, 1995, and attached affidavits by petitioner's counsel Lois C. Blaesing and petitioner's former counsel Fred Gordon. Petitioner submitted such response pursuant to Rule 50(c) in lieu of attending the hearing on the pending motions and specifically addressed respondent's motion to dismiss in such response. On July 19, 1995, at Washington, D.C., pursuant to notice, the Court conducted a hearing with respect to the pending motions at which respondent proved that respondent's docket attorney in Detroit, Michigan, Timothy Murphy, had no authority to settle a plastics recycling issue but only was authorized to settle the shopping center issue for 1982 in this case. At such hearing, respondent's counsel conceded the 1982 shopping center issue, and also the issue as to section 6621(c) consistently with the first two paragraphs (and only those paragraphs) of the proposed stipulation of agreed adjustments, as quoted above.

OPINION

In <u>Provizer v. Commissioner</u>, T.C. Memo. 1992-177, a test case involving the Clearwater transaction and another tier partnership, this Court (1) found that each Sentinel EPE recycler had a fair market value not in excess of $50,000, (2) held that the Clearwater transaction was a sham because it lacked economic substance and a business purpose, (3) upheld the section 6659 addition to tax for valuation overstatement since the underpayment of taxes was directly related to the overstatement of the value of the Sentinel EPE recyclers, and (4) held that losses and credits claimed with respect to Clearwater were attributable to tax-motivated transactions within the meaning of section 6621(c). In reaching the conclusion that the Clearwater transaction lacked economic substance and a business purpose, this Court relied heavily upon the overvaluation of the Sentinel EPE recyclers.

Although petitioner has not agreed to be bound by the <u>Provizer</u> opinion, he has stipulated that his investment in the Sentinel EPE recyclers was similar to the investment described in <u>Provizer</u>, and, pursuant to his request, we have taken judicial notice of our opinion in the <u>Provizer</u> case. Petitioner invested in EI, a tier partnership that invested in Clearwater. The underlying transaction in this case (the Clearwater transaction),

and the Sentinel EPE recyclers considered in this case, are the same transaction and machines considered in Provizer.

Issue 1. Resolution of Questions Concerning Petitioner's Investment in Efron Investors II for 1982.

In the notice of deficiency, respondent determined a deficiency in petitioner's 1982 Federal income tax in the amount of $4,502. The deficiency for 1982 resulted from respondent's examination results with respect to the 1982 partnership return of Efron II and the consequent adjustment of petitioner's claimed deductions from Efron II in the amount of $10,248.

Prior to trial, the parties undertook to reach an agreement as to a portion of the Efron II investment concerning a shopping center. Respondent's attorney in charge of that issue prepared a proposed stipulation of agreed adjustments; petitioner's counsel signed it; the attorney who prepared the document also signed it and forwarded it to counsel for respondent in charge of the plastics recycling issues for review and coordination. That counsel for respondent disapproved a portion of the proposed stipulation as subject to misinterpretation and the original of the proposed stipulation never was delivered to petitioner's counsel or submitted to this Court.

Petitioner has filed a motion, which the Court has designated as petitioner's motion to reopen record, in which petitioner urges that respondent be required to produce the proposed stipulation of agreed adjustments and that the Court

enforce it in all respects. Petitioner states that the record has remained open for receipt of this stipulation. We agree that the record has been held open for receipt of a stipulation relating to nonplastics issues. Respondent has agreed to the first two numbered paragraphs of the proposed stipulation of agreed adjustments. Those paragraphs state:

> 1. The respondent in its Notice of Deficiency disallowed $10,248.00 of petitioner's claimed losses relative to Efron Investors II Partnership.

> 2. The petitioner is allowed to deduct $2,166.00 of the amount disallowed by the respondent. The petitioner concedes the remaining amount disallowed of $8,082.00.

The parties are in agreement as to the introductory paragraph of the proposed stipulation, as quoted in our findings of fact, and also as to the first two paragraphs, quoted there and above. Accordingly, petitioner's motion is granted insofar as it relates to such paragraphs only, and they are received into the record as stipulated by the parties. Additionally, we note that respondent has conceded that section 6621(c) is inapplicable to the deficiency for 1982.

Petitioner urges that we also require that respondent stipulate to a third paragraph of the proposed stipulation of agreed adjustments as follows:

> 3. As a result of this stipulation, all issues pertaining to Efron Investors II Partnership for 1982 have been resolved.

Petitioner interprets this paragraph as prohibiting any adjustments to petitioner's tax for 1982 as a result of any interest in a TEFRA partnership, specifically the Efron II partnership interest in Dickinson. Petitioner contends that the attorney who drafted and signed the proposed stipulation for respondent was authorized to represent respondent and that respondent's failure to produce the document is impermissible. Respondent's position is that this Court has no jurisdiction to decide a TEFRA partnership issue at the partner level, that the Detroit docket attorney had no authority to execute a stipulation with respect to the plastics recycling issue in this case, and that the paragraph in question, properly interpreted, relates only to the shopping center or nonplastics issues in this case. Respondent has filed a motion to dismiss for lack of jurisdiction and to strike the portions of the pleadings relating to Dickinson. Respondent urges that we deny petitioner's motion to reopen the record and grant respondent's motion to dismiss and to strike. We agree with respondent except as to the agreement of the parties with respect to the shopping center adjustments and respondent's concession as to section 6621(c) for 1982.

During 1982, Efron II invested in Dickinson Recycling Associates, a partnership that is subject to the provisions of sections 6221 through 6231 (the TEFRA provisions) enacted by the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248,

sec. 402(a), 96 Stat. 648.  The TEFRA provisions apply generally to partnerships for all taxable years beginning after September 3, 1982.  Sparks v. Commissioner, 87 T.C. 1279, 1284 (1986). Under the TEFRA provisions, the tax treatment of partnership items is decided at the partnership level in a unified partnership proceeding rather than separate proceedings for each partner, Boyd v. Commissioner, 101 T.C. 365, 369 (1993), and "affected items", items affected by the treatment of partnership items (e.g. certain additions to tax), can only be assessed following the conclusion of the partnership proceeding.  See sec. 6225(a); Maxwell v. Commissioner, 87 T.C. 783, 791 n.6 (1986).

The question whether we have jurisdiction to determine an overpayment attributable to partnership items in a proceeding for redetermination of deficiencies attributable to nonpartnership items has been decided in a case involving a plastics recycling partnership.  Trost v. Commissioner, 95 T.C. 560 (1990).  In a case involving circumstances much like those in the present case, this Court held that the portion of any deficiency attributable to partnership items cannot be considered in the partner's personal case.  Id. at 563.

In the present case, respondent determined deficiencies in petitioner's income taxes for 1981 and 1982.  Petitioner filed a petition for review of respondent's deficiency determinations and claimed therein that benefits flowed through to him from a TEFRA

partnership for 1982.  Petitioner further urges that he entered into a stipulation of agreed adjustments with respect to 1982 and that in such stipulation in petitioner's individual case, petitioner and respondent resolved issues concerning partnership items.  As this Court has stated in Maxwell v. Commissioner, supra, and Trost v. Commissioner, supra, we do not have jurisdiction to consider petitioner's claims with respect to partnership items because this case only involves nonpartnership items.

This Court has limited jurisdiction and may only exercise jurisdiction to the extent expressly permitted by statute.  Trost v. Commissioner, supra at 565, Judge v. Commissioner, 88 T.C. 1175, 1180-1181 (1987).  Accordingly, contrary to petitioner's arguments, we do not have jurisdiction over the TEFRA partnership items for 1982 in these proceedings.  Those matters have been considered at the partnership level in Dickinson, etc., and are not subject to modification in these proceedings at the partner level.

We note also that, in these proceedings, respondent has established that the Detroit docket attorney in charge of the nonplastics issue here had no authority to enter into an agreement with respect to plastics issues.  There is no evidence in this case that he intended to go beyond his authority.  Nor is there any convincing evidence that petitioner's counsel, an

experienced tax attorney, was misled in any way.  See <u>Baratelli</u> <u>v. Commissioner</u>, T.C. Memo. 1994-484.

Additionally, in our view the proposed stipulation of agreed adjustments, considered in context, only states the agreement of the parties with respect to nonplastics issues and has no application to the partnership level adjustments over which we lack jurisdiction.  Respondent's supervising attorney, exercising proper caution, refused to deliver the document to opposing counsel because of concern about possible misconstruction of the terminology.  Accordingly, the parties have agreed as to all aspects of the proposed stipulation except the final numbered paragraph.  The construction sought by petitioner is erroneous; respondent has not agreed to it; and we do not have jurisdiction over the partnership level matters petitioner urges even if there had been an agreement.

Accordingly, respondent's motion to dismiss for lack of jurisdiction and to strike will be granted.  Petitioner's motion, designated as a motion to reopen record, will be denied except to the extent of respondent's agreement to the first 2 paragraphs of the proposed stipulation of agreed adjustments, as stated above.

The Efron II issues concerning a shopping center (the non-TEFRA issues) have been resolved by stipulation of the parties. Issues concerning partnership items and affected items (TEFRA items) related to Efron II's investment in Dickinson are for

resolution in a proceeding other than this proceeding. Accordingly, all issues with respect to 1982, as set forth in the pleadings and the notice of deficiency that form the basis for our jurisdiction in this case, have been resolved. The remaining issues relate to petitioner's investment in Clearwater through his investment in EI in 1981.

## Issue 2. Admissibility of Expert Reports and Testimony

Before addressing the substantive issues in this case, we resolve an evidentiary issue. At trial, respondent offered in evidence the expert opinions and testimony of Steven Grossman (Grossman) and Richard Lindstrom (Lindstrom). At trial and in his reply brief, petitioner objects to the admissibility of the testimony and reports.

The expert reports and testimony of Grossman and Lindstrom are identical to the testimony and reports in Fine v. Commissioner, T.C. Memo. 1995-222. In addition, petitioner's arguments with respect to the admissibility of the expert testimony and reports are identical to the arguments made in the Fine case. For discussions of the reports and testimony, see Fine v. Commissioner, supra, and Provizer v. Commissioner, T.C. Memo. 1992-177. For a discussion of the testimony and petitioner's arguments concerning the admissibility of the testimony and reports, see Fine.

For reasons set forth in Fine v. Commissioner, supra, we hold that the reports and testimony of Grossman and Lindstrom are relevant and admissible and that Grossman and Lindstrom are experts in the fields of plastics, engineering, and technical information.  We do not, however, accept Grossman or Lindstrom as experts with respect to the ability of the average person, who has not had extensive education in science and engineering, to conduct technical research, and we have limited our consideration of their reports and testimony to the areas of their expertise. We also hold that Grossman's report meets the requirements of Rule 143(f).

Issue 3.  Deductions and Tax Credits With Respect to EI and Clearwater

The underlying transaction in this case is substantially identical in all respects to the transaction in Provizer v. Commissioner, supra.  The parties have stipulated the facts concerning the deficiency essentially as set forth in our Provizer opinion.  Based on this record, we hold that the Clearwater transaction was a sham and lacked economic substance. In reaching this conclusion, we rely heavily upon the overvaluation of the Sentinel EPE recyclers.  Accordingly, respondent is sustained on the issue with respect to the underlying deficiency for 1981.  Moreover, we note that petitioner has stated his concession of this issue on brief.  The record plainly supports respondent's determination regardless of

such concession.  For a detailed discussion of the facts and the applicable law, see Provizer v. Commissioner, supra.

Issue 4.  Sec. 6653(a) Negligence

In her first amendment to answer, respondent asserted that petitioner was liable for the negligence-related additions to tax under section 6653(a)(1) and (2) for 1981.  Because these additions to tax were raised for the first time in respondent's amendment to answer, respondent bears the burden of proof on this issue.  Rule 142(a); Vecchio v. Commissioner, 103 T.C. 170, 196 (1994).

Section 6653(a)(1) provides for an addition to tax equal to 5 percent of the underpayment if any part of an underpayment of tax is due to negligence or intentional disregard of rules or regulations.  In cases involving negligence, an additional amount is added to the tax under section 6653(a)(2); such amount is equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence. Negligence is defined as the failure to exercise the due care that a reasonable and ordinarily prudent person would employ under the circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The question is whether a particular taxpayer's actions in connection with the transactions were reasonable in light of his experience and the nature of the investment or business.  See Henry Schwartz Corp. v. Commissioner, 60 T.C. 728, 740 (1973).

Petitioner contends that he was reasonable in claiming deductions and a business energy credit with respect to EI's investment in Clearwater. To support his contention, petitioner alleges the following: (1) That claiming the deductions and credits with respect to EI's investment in Clearwater was reasonable in light of a so-called oil crisis in the United States in 1981; (2) that in claiming the deductions and credits, he specifically relied upon Efron; and (3) that he was a so-called unsophisticated investor.

Petitioner argues, in general terms, that an alleged oil crisis in the United States in 1981 excuses him from the negligence additions to tax with respect to his investment in Clearwater through EI. Petitioner failed to explain how the so-called oil crisis provided a reasonable basis for him to invest in Clearwater and claim the associated tax deductions and credits. We find petitioner's vague, general claims concerning the so-called oil crisis to be without merit.

Petitioner's reliance on Krause v. Commissioner, 99 T.C. 132 (1992), affd. sub nom. Hildebrand v. Commissioner, 28 F.3d 1024 (10th Cir. 1994), is misplaced. The facts in the Krause case are distinctly different from the facts of this case. In the Krause case, the taxpayers invested in limited partnerships whose investment objectives concerned enhanced oil recovery (EOR) technology. The Krause opinion notes that during the late 1970's

and early 1980's, the Federal Government adopted specific programs to aid research and development of EOR technology. Id. at 135-136. In holding that the taxpayers in the Krause case were not liable for the negligence-related additions to tax, this Court noted that one of the government's expert witnesses acknowledged that "investors may have been significantly and reasonably influenced by the energy price hysteria that existed in the late 1970's and early 1980's to invest in EOR technology." Id. at 177. In the present case, however, one of respondent's experts, Grossman, noted that the price of plastics materials is not directly proportional to the price of oil, that less than 10 percent of crude oil is utilized for making plastics materials, and that studies have shown that "a 300% increase in crude oil prices results in only a 30 to 40% increase in the cost of plastic products." While EOR was, according to our Krause opinion, in the forefront of national policy and the media during the late 1970's and early 1980's, there is no showing in these records that the so-called energy crisis would provide a reasonable basis for petitioner's investing in recycling of polyethylene.

Moreover, the taxpayers in the Krause opinion were experienced in or investigated the oil industry and EOR technology specifically. One of the taxpayers in the Krause case undertook significant investigation of the proposed investment

including researching EOR technology.  The other taxpayer was a geological and mining engineer whose work included research of oil recovery methods and who hired an independent geologic engineer to review the offering materials.  Id. at 166.  In the present case, petitioner was not experienced or educated in plastics recycling or plastics materials.  He did not independently investigate the Sentinel recyclers, and he did not hire an expert in plastics to evaluate the Clearwater transaction.  We consider petitioner's arguments with respect to the Krause case inapplicable and find his vague, general claims concerning the so-called oil crisis to be without merit.

On his 1981 Federal income tax return, petitioner claimed a business energy credit related to Clearwater in the amount of $9,651, while his investment in Clearwater through EI was less than $11,500.[6]  Because petitioner did not claim an investment tax credit with respect to the Clearwater recyclers, the credit claimed on his 1981 Federal income tax return related to EI's investment in Clearwater does not exceed the amount he invested in Clearwater through EI.  In addition to the credit claimed on

---

[6]    Calculated as follows:

EI's Investment in Clearwater    Petitioner's Share of EI
            $350,000              x        3.194%              = $11,179

EI's Investment in Clearwater
            $350,000           x Petitioner's Investment    = $11,290
        EI's Total Investment             $50,000
            $1,550,000

his 1981 return, however, petitioner claimed an operating loss in the amount of $8,945. Therefore, like the taxpayers in Provizer v. Commissioner, T.C. Memo. 1992-177, "except for a few weeks at the beginning, [petitioner] never had any money in the [Clearwater] deal." A reasonably prudent person would have asked a qualified independent tax adviser if this windfall were not too good to be true. McCrary v. Commissioner, 92 T.C. 827, 850 (1989).

In fact, petitioner argues that he consulted a qualified adviser and relied upon him in claiming the disallowed losses and tax credits. Petitioner argues that his reliance on the advice of Efron insulates him from the negligence additions to tax.

Under some circumstances a taxpayer may avoid liability for the additions to tax for negligence under section 6653(a) if reasonable reliance on a competent professional adviser is shown. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Such circumstances are not present in this case. Moreover, reliance on professional advice, standing alone, is not an absolute defense to negligence, but rather a factor to be considered. Id. In order for reliance on professional advice to excuse a taxpayer from the negligence additions to tax, the reliance must be reasonable, in good faith, and based upon full disclosure. Id.; see Weis v. Commissioner, 94 T.C. 473, 487 (1990); Ewing v.

Commissioner, 91 T.C. 396, 423-424 (1988), affd. without published opinion 940 F.2d 1534 (9th Cir. 1991); Pritchett v. Commissioner, 63 T.C. 149, 174-175 (1974).

We have rejected pleas of reliance when neither the taxpayer nor the advisers purportedly relied upon by the taxpayer knew anything about the nontax business aspects of the contemplated venture. Beck v. Commissioner, 85 T.C. 557 (1985); Flowers v. Commissioner, 80 T.C. 914 (1983); Steerman v. Commissioner, T.C. Memo. 1993-447. The record does not show that Efron possessed any special qualifications or professional skills in the recycling or plastics industries. In addition, Efron did not hire anyone with plastics or recycling expertise to evaluate the Clearwater transaction.

Petitioner testified that in 1981 he consulted with the following individuals concerning investments: (1) Jeffrey Jacobs, his attorney and agent; (2) Artie Brown, his accountant; and (3) "other people * * * [who] came out of the woodwork and offered [him] investments."

Efron was not petitioner's agent or attorney in 1981. Petitioner met Efron through one of petitioner's teammates at a cocktail party. Prior to petitioner's investment in EI, he and Efron had only an acquaintance which petitioner described as a "friendship type" of relationship. Although he had met Efron a few times before investing in EI, he had not used Efron as an

investment adviser.  The offering memorandum and the revised offering memorandum disclosed the fact that Efron was receiving substantial compensation and fees as the general partner of EI and as a 50-percent owner of MFA.  In addition, both of the EI offering memoranda specifically warned potential investors that they were "not to consider the contents of [the offering memoranda] or any communication from the partnership or its general partners as legal or tax advice", and Efron testified that he advised every limited partner in EI to talk to an independent adviser.  Petitioner had such advisers available, but testified that he did not rely upon them with respect to this matter.  In our view petitioner's reliance on Efron was not reasonable, as Efron was merely a casual acquaintance who was essentially selling a speculative investment product and had no fiduciary or professional relationship with petitioner and specifically warned him in writing to obtain independent advice.  Accordingly, we hold that petitioner is not entitled to relief from the negligence additions to tax under section 6653(a)(1) and (2) because of his purported reliance on Efron.

Petitioner's reliance on Heasley v. Commissioner, 902 F.2d 380 (5th Cir. 1990), revg. T.C. Memo. 1988-408, is misplaced. The facts in the Heasley case are distinctly different from the facts of this case.  In the Heasley case the taxpayers actively monitored their investment.  Petitioner has failed to provide

evidence of any effort to monitor his investment in EI.  He testified that he did not learn of the change in the nature of EI's investments to include recycling until 3 months prior to trial of this case, over 10 years after he invested in EI.  In addition, the taxpayers in the Heasley case were not educated beyond high school and had limited investment experience, while in the instant case petitioner had nearly completed the requirements for a bachelor of science degree in business management and had substantial previous investment experience.  Prior to his investment in EI, petitioner had invested in stocks, bonds, commodities, certificates of deposit, real estate, a professional women's basketball team, a sock company, and oil and gas partnerships.  In fact, on his EI offeree questionnaire, petitioner indicated that he believed that he possessed "sufficient knowledge of private placements and real estate investments to evaluate the risks associated with investing" in EI because of his "experience in other investments."  We consider petitioner's arguments with respect to the Heasley case inapplicable.

At trial, petitioner could remember almost nothing about his investment in EI.  Although he testified that he was "sure" that he had seen the original offering memorandum, he did not recall reading it.  Petitioner could not recall whether he borrowed the funds to acquire his interest in EI.  At the time of his

investment, he did not know the name of the recycling partnership in which EI invested, and he knew "nothing" about the recycling equipment. In fact, petitioner testified that he did not learn of EI's investment in recycling until 3 months prior to trial of his case.

We conclude that petitioner was negligent in claiming the deductions and credits with respect to EI's investment in Clearwater on his 1981 Federal income tax return. We hold, upon consideration of the entire record, that petitioner is liable for the negligence additions to tax under the provisions of section 6653(a)(1) and (2) for 1981.

Issue 5. Sec. 6659 Valuation Overstatement

Respondent determined that petitioner was liable for the addition to tax for valuation overstatement under section 6659 on the underpayment of his 1981 Federal income tax attributable to the business energy credit claimed with respect to EI and Clearwater. Petitioner has the burden of proving respondent's determination of this addition to tax erroneous. Rule 142(a); Rybak v. Commissioner, 91 T.C. 524, 566 (1988).

The underlying facts of this case with respect to this issue are substantially the same as those in Fine v. Commissioner, T.C. Memo. 1995-222. In addition, petitioner's arguments with respect to this issue are identical to the arguments made in the Fine case. For reasons set forth in the Fine opinion, we hold that

petitioner is liable for the section 6659 addition to tax at the rate of 30 percent of the underpayment of tax attributable to the disallowed credit for 1981.

Issue 6.  Sec. 6621(c) Tax-Motivated Transactions

Respondent determined that interest on the deficiency in petitioner's 1981 Federal income tax accruing after December 31, 1984, would be calculated under section 6621(c).[7]  The annual rate of interest under section 6621(c) equals 120 percent of the interest payable under section 6601 with respect to any substantial underpayment attributable to tax-motivated transactions.  An underpayment is substantial if it exceeds $1,000.  Sec. 6621(c)(2).

The underlying facts of this case are substantially the same as those in Fine v. Commissioner, supra.  In addition, petitioner's arguments on brief with respect to this issue are verbatim copies of the arguments in the taxpayers' briefs in the Fine case.  For reasons set forth in the Fine opinion, we hold that respondent's determination as to the applicable interest rate for deficiencies attributable to tax-motivated transactions is sustained, and the increased rate of interest applies for 1981.

---

[7]    Respondent also determined that interest on the deficiency in petitioner's 1982 Federal income tax accruing after Dec. 31, 1984, would be calculated under section 6621(c), but respondent has conceded this issue.

To reflect the foregoing,

Appropriate orders will be issued granting respondent's motion to dismiss and to strike and denying, except as stated herein, petitioner's motion to reopen record, and decision will be entered under Rule 155.